IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN E. HARGROVE, JR.,

        Plaintiff,

v.                                                       Civil Action No. 1:08cv132
                                                     (Judge Keeley)

JACOB FULLER, NURSE JESSICA,
NURSE ERIN, CHAD, RUDLOFF, DR.
JOE, C/O KING, DR. EDWARDS AND
DR. JAMES,

        Defendants.

**OPINION/REPORT AND RECOMMENDATION**

This case is before the undersigned for a Report and Recommendation on the plaintiff's amended complaint. See Dckt. 29 (Order of Referral).

**I.**    **The Amended Complaint**

In the amended complaint, the plaintiff asserts that the defendant's have been deliberately indifferent to his serious medical needs. Specifically, the plaintiff asserts that when he arrived at the Eastern Regional Jail on August 3, 2007, Nurse Fuller was responsible for his medical intake screening. At that time, the plaintiff advised Nurse Fuller of his sleep apnea and need of a C-papt breathing devise. As a result, the plaintiff was assigned to the medical unit of the jail. The plaintiff also advised Nurse Fuller of his need for a second sleep study. Nurse Fuller confirmed the plaintiff's need for a second sleep study from a hospital in Connecticut. Moreover, once in the medical unit, the plaintiff also informed the Administrator, Chad, of his need for a second sleep study. The plaintiff asserts that even though Nurse Karry also read "the report," he has not received a second sleep study.

Next, the plaintiff asserts that he supplied the medical staff with a complete list of the medications he was taking pursuant to his primary care doctor in Connecticut. The plaintiff asserts that he gave such list to Nurse Fuller during his medical intake screening. At that time, Nurse Fuller requested that the plaintiff sign medical release forms for his other doctors. The plaintiff asserts that he signed such forms on three different occasions, but that his medical records did not arrive at the Eastern Regional Jail until February of 2008. The plaintiff asserts that those records confirmed the pain medications and medical equipment he was supposed to be using, including a cervical collar to aid in pain relief in his neck, a full back brace with shank support and a wrist brace with shank support for both wrists. The plaintiff asserts that these devices are necessary to manage his various medical conditions, such as carpel tunnel syndrome, heavy arthritis in his lower back and hips and degenerative disk disease in the neck.

At some point after his arrival at the Eastern Regional Jail, the plaintiff inquired with Nurse K. Alexander, Nurse Jessica, Nurse Erin and Nurse Fuller about his pain medications. The plaintiff alleges that he was informed by all of these nurses that he could not have the pain medications prescribed by his primary care doctor in Connecticut.

Next, the plaintiff asserts that during the winter of 2007 and 2008, it was so cold in the medical unit that the inmates housed there were issued coats to help keep them warm. Morever, because of the extreme cold temperatures, the plaintiff asserts that he started having severe headaches from the cold air passing through his breathing machine at night. The plaintiff allegedly complained to Nurse Fuller, Nurse Jessica, Nurse Erin and Nurse Alexander. As a result, the plaintiff was given permission to run an extension cord up underneath his covers so that his C-papt machine could be placed there in order to circulate warmer air from under the blankets. The plaintiff

asserts that he slept with a live extension cord in his bed for four months.

Moreover, during this time, the plaintiff's asserts that the cold air and the thin mattress given out by the jail caused him to suffer more pain in his lower back and hips. Sometime later, Nurse Fuller was promoted to medical administrator and approved the plaintiff for two mattresses which helped to ease some of his pain. However, despite his increased pain, the plaintiff asserts that Nurse, Jake, Nurse Erin and Nurse Jessica would not schedule him to see a doctor. The plaintiff asserts that he did not get to see a doctor until after he had convinced one of the other nurses to place his name on the list. Even then, however, the plaintiff asserts that his name kept getting removed from the list and his depression medications kept getting deleted.

In or around March 2008, the plaintiff asserts that he noticed a lump "popping up" on his inner right wrist. The plaintiff showed the lump to Nurse Darlene who placed his name on the list to see the doctor. The plaintiff eventually saw Dr. James about the lump on his wrist. Dr. James ordered x-rays of the plaintiff's right wrist and neck. The plaintiff asserts that the x-rays were taken in August of 2008, but by November of 2008, he had not had any follow-up nor been told the results of the x-rays. The plaintiff asserts that the last time he saw Dr. James, he was read a surgeon's report prepared by Dr. Edwards. The plaintiff asserts that nothing else has been done for his right wrist although the pain in his wrist has become much worse.

On or about April 10, 2008, the plaintiff was moved out of the medical unit because his breathing machine was not functioning for him in the manner it should. The plaintiff asserts that the machine was not functioning properly because he never received the second sleep study and his C-papt machine was not calibrated for his needs.

From his time in the medical unit, the plaintiff makes many complaints. Specifically, the

plaintiff complains that the unit is constantly lit, that he rarely had communication with others, that he went weeks without having a shower, recreation or even a newspaper. The plaintiff also complains that at one point, he went six weeks without clean bedding. Now that he is in the general population, the plaintiff complains that C/O Miller took his second mattress and now his condition which prompted the use of second mattress, has worsened. The plaintiff asserts that he was informed by Nurse Fuller that no matter where he went in the facility, he would be able to keep the second mattress.

The plaintiff further asserts that despite his continued complaints as to the pain in his right wrist, and the limited use thereof, he has been given no treatment for that condition. The plaintiff admits, however, that he has been given Flexerill and Altram to manage his pain, but asserts that neither pain medication is having much effect.

The plaintiff also asserts that he has degenerative disk disorder in his neck and that he was advised by medical personnel two years ago that he would need surgery. However, the plaintiff's surgery was delayed at that time because he needed to quit smoking for 30 days prior to surgery and because the doctor suspected that the plaintiff had sleep apnea.

Moreover, the plaintiff asserts that he was diagnosed with chronic back pain, arthritis and carpel tunnel syndrome prior to his incarceration. The plaintiff asserts that he was on a regimen of pain medication to manage these conditions. Such regimen was established by his primary care physician and including Vicodin for pain. The plaintiff asserts that the medical staff has been informed of these conditions and has received copies of his medical records from his primary care physician. However, medical staff has not allowed plaintiff to continue the same pain management treatments that he had been on prior to his incarceration, particularly, the Vicodin. The plaintiff has

4

been informed by the Nurses that they are not required to follow the same treatment regimen as the plaintiff's primary care physician, only the treatment regimen established by the facility's doctors.

As relief, the plaintiff seeks immediate surgery. In addition, until such time as surgery can be performed on his wrist and neck, the plaintiff seeks pain medication that actually works. The plaintiff also seeks monetary damages, the medical equipment necessary to manage his medical issues and a second matress.

Filed contemporaneous with his Amended Complaint, the plaintiff also filed a Motion for Writ Commanding Prime Care Medical to provide the plaintiff with needed prescription pain medication, medical equipment and surgery. In addition, the plaintiff seeks to have his injuries assessed by an independent licensed orthopedic surgeon and to have Prime Care Medical follow through on the recommendations of the orthopedic surgeon in a speedy and comprehensive manner. In support of his motion, the plaintiff asserts that since arriving at the Eastern Regional Jail, he has informed the medical staff of his various medical conditions and the recommendations and treatments established by his prior primary care physician. However, the plaintiff asserts that medical staff has failed to follow through with the necessary studies, treatments, medications and surgeries. The plaintiff asserts that such failure has caused him to suffer unnecessary pain and allow his conditions to worsen. The plaintiff also asserts that the failure to provide him with the necessary medical treatment has caused him to develop other problems, such as carpel tunnel syndrome in his right wrist and a ganglin cyst. The plaintiff asserts that months passed before he was sent to see Dr. Edwards, an orthopedic surgeon, and that the jail refuses to give him pain medications strong enough to be of use. The plaintiff asserts that such delay and inaction has caused his health to deteriorate to the point that he can no longer do the things he used to. However, the plaintiff admits that he

gave up his C-papt machine to be housed in the general population, that he voluntarily quit taking certain pain medications and that he refuses to take certain psychiatric medications.

The plaintiff asserts that such action on the part of the defendants amounts to the wanton infliction of pain in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the amended complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III. Analysis

---

[1] Id. at 327.

6

## A. **Defendants Chad and Rudloff**

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

In the body of the amended complaint, the plaintiff makes no specific allegations of a violation of any constitutional right against defendants Chad and Rudloff. Instead, it appears that the plaintiff merely names Chad and Rudloff in their official capacities as the former medical administrator and as the facility administrator, respectively. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)). In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain his claims against defendants Chad and Rudloff and those

claims should be dismissed.

Moreover, to the extent that the plaintiff attempts to name these defendants in their personal capacities, the plaintiff has also failed to state a claim. Because the plaintiff does not assert that either of these defendants was personally involved in a violation of his constitutional rights, he has at best, made a claim for supervisory liability. However, there is no *respondeat superior* liability under § 1983. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra.

Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2] As the plaintiff fails to allege any personal involvement on the part of Chad and Rudloff,

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of

8

and fails to make any allegations which reveal the presence of the required elements for supervisory liability, the plaintiff fails to state a claim against those defendants.[3]

**B.    Jacob Fuller, Nurse Jessica, Nurse Erin, Dr. Joe, Dr. Edwards and Dr. James**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be

---

documented widespread abuses.'" Id.

[3] To the extent the plaintiff may be asserting that those defendants were deliberately indifferent to his serious medical needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state a claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In the complaint, the plaintiff asserts that defendants Fuller, Nurse Jessica, Nurse Erin, Dr. Joe, Dr. Edwards and Dr. James were each somehow involved in his medical care. In addition, the plaintiff asserts that these individuals knew of his serious medical conditions, but either denied or delayed treatment. As result, the plaintiff asserts that one or more of his conditions worsened, or that he experienced unnecessary pain and suffering. According the undersigned finds that these defendants should be made to answer the complaint.

**C.  C/O King**

In the complaint, the plaintiff asserts that defendant King denied him access to the law library and was involved in the theft of the plaintiff's personal property. The plaintiff's states no support for these claims in the body of his complaint, however. Instead, it appears that the plaintiff relies on the exhibits to his complaint to establish his claim. For example, in paragraph 4 of exhibit 9 to the amended complaint, the plaintiff attaches a grievance request he sent to Lt. Bittinger on March 23, 2008. In that request, the plaintiff asserts that C/O King "informed (him) that movies are a privilege earned by an inmate, by keeping their living spaces cleaned," and that "there will be inspections in medical" starting that Thursday. In that same exhibit, the plaintiff states that he had a "verbal confrontation" with C/O King about the law library. Specifically, the plaintiff alleges:

> As we got near the law library(,) I explained to C/O King that the nurse spoke with Corperal (sic) Wilson. That I was going into the law library as oposed (sic) to a shower. (At this point, I saw Officer Dalotan go into Admitting). C/O King opened the door to the law library, as I was steping (sic) I informed him I needed a paper to write on. We got into a brief verberal (sic) confrontation, he was trying to tell me only the counselors handed that out. I told him I've always gotten it from the shift supervisor. At this point(,) not wanting to cause further conflict, I asked him to bring me back to my cell and I would use what I have. He did so, in a rather agervated (sic) manor (sic). Brought me back to the law library, then he went to admitting. About 2 minutes later(,) he come (sic) out holding a log book, demanded I pick my stuff up, I was finished in the law library. He pointed out that I had been in the law library on 3/19/08. I said yes and this was a new week. He got angery (sic) as we walked into admitting, he said, we don't have to provide you with no f***ing law library any how. When I informed him that the jail does have to provide on, he got madder and said go take your f***ing shower. At that, Corperal (sic) Wilson, C/O Chrysler, a couple other() officers and Dalotan. Daloto was out of uniform, looked over at me and said to the officer with him, come on let(')s go f*** with some perverts. As Dalanta walked out(,) C/O King had begun complaining he had to write up (a) guy in medical cell M-1, and he made it known he was pissed about having to do paperwork. At this point(,) I told C/O King , just because your (sic) upset with this other guy(,) there's no reason to take it out on me. He told me to shut up and go shower. Now Corperal (sic) Wilson was the one who said I could go to the law library. He just sat there and never said a word. As I came out of the shower, C/O King made the remark about inspecting medical cells.

In another letter to Lt. Bittinger on March 26, 2008, see exhibit 9 to the amended complaint,

11

the plaintiff states:

> I got up and went to admitting. I knew what was up the minute I saw C/O King, and Corperal (sic) Dalota sitting there. Corperal (sic) Dalota began asking me about something that had happened. C/O's Kurusso, and King left the area(.) I knew right then that they were going to shake down my cell. Approximately 20 min later(,) C/O's King and Kurusso came back. C/O King [had] in his hand several pages of copied papers. Legal papers to be exact. I told him he had no right to take legal paperwork from my cell. As well as he had a Christmas card, sent to me. He also had several computer photo images of my girlfriend and grandchildren. He told me that the computer images were not allowed. Well(,) he was one of the C/O's that gave the images to me when they came in the mail! He told me he was putting everything in my property. The pictures are fine. But I told him I wanted my legal papework (sic). C/O Kurusso reached his hand out and said(,) come on let[']s go back to your cell. Again I stated that I wanted my paperwork. When I returned to my cell in medical, I noticed a mattress in the hall on the floor. [It] came off my bed, I'm medicaly (sic) approved for 2 mattresses. The C/O's knew this(,) they did it to be spitefull (sic).

In his letters to Lt. Bittinger, the plaintiff asserts that C/O King is harassing him. However, neither in the letters, nor anywhere in the complaint, does the plaintiff allege that C/O King's actions violate any specific constitutional right or that he was actually harmed by C/O King's actions. Indeed, even construing the plaintiff's claims liberally, the undersigned can find no support for a constitutional violation. Restricted law library hours, shake downs and the like, are all a necessary part of prison life. The fact that C/O King may have been aggravated with the plaintiff, or informed the plaintiff of certain prison policies, does not establish that a constitutional right has been violated. Accordingly, the undersigned finds that the plaintiff has failed to state sufficient facts to support a finding that defendant King violated any of the plaintiff's constitutional rights. Therefore, the plaintiff has failed to state a claim against defendant King and defendant King should be dismissed as a defendant in this action.

### IV.  Recommendation

For the reasons set forth herein, the undersigned recommends the following:

(1) the plaintiff's claims against defendants Chad and Rudloff be **DISMISSED with prejudice** pursuant to 28 U.S.C. §§ 1915A and 1915(e) for the failure to state a claim for which relief may be granted;

(2) the plaintiff's Eighth Amendment Claims against defendants Fuller, Nurse Jessica, Nurse Erin, Dr. Joe, Dr. Edwards and Dr. James **PROCEED**, and that the United States Marshal Service be directed to **SERVE** a copy of the summons and the amended complaint upon those defendants.

(3) the plaintiff's claims against defendant King be **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915A and 1915(e) for the failure to state a claim for which relief may be granted.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: February 19, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE